# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA LILIAN PADILLA AYALA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TELEDYNE DEFENSE ELECTRONICS, D/B/A TELEDYNE RELAYS, a Delaware limited liability company; VERONICA CLAXON, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | **Case No. 2:21-CV-01322-AB-MRW**<br><br>**ORDER GRANTING MOTION FOR REMAND** |

Before the Court is Plaintiff Rosa Lilian Padilla Ayala's Motion to Remand. ("Plaintiff," "Motion," Dkt. No. 10.) Defendant Teledyne Defense Electronics, doing

1.

business as Teledyne Relays ("Defendant," or "Teledyne"), opposed ("Opp'n," Dkt. No. 14), and Plaintiff replied ("Reply," Dkt. No. 15.) The Court deemed the matter appropriate for decision without oral argument and vacated the hearing scheduled for April 9, 2021. *See* Fed. R. Civ. P. 78; LR 7-15. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

### a. Factual Background

The following allegations are taken from the Plaintiff's Complaint filed in Los Angeles County Superior Court. ("Compl.," Dkt. No. 1-1). Plaintiff and Defendant Teledyne are residents of Los Angeles County in California. Compl. ¶¶ 2–3, 6. Plaintiff was an employee for Defendant beginning around 2005. *Id.*, ¶ 17. Around March 2017, Plaintiff was transferred to a different department under supervisor Veronica Claxon.[1] *Id.*, ¶ 19. On a daily basis, Ms. Claxon referred to the Plaintiff using racial slurs. *Id.* Plaintiff reported the behavior to Defendant at one undetermined date and again around September 2018. *Id.*, ¶¶ 19–20. On April 13, 2020 Plaintiff was terminated. ¶ 21.

### b. Procedural Background

Plaintiff filed a Complaint in Los Angeles County Superior Court on June 11, 2020 alleging various violations of state employment law under the California Fair Employment and Housing Act ("FEHA") including: discrimination, harassment, retaliation, failure to prevent discrimination or retaliation, and wrongful termination. *See* Compl. On February 12, 2020 Defendant removed the case to this Court pursuant to 9 U.S.C. § 205 on the grounds that the employment arbitration agreement ("Arbitration Agreement" or "Agreement") between Plaintiff and Defendant is subject

---

[1] The Court will use Claxon as this is how this defendant is listed in the caption. However, it should be noted that in some documents Plaintiff uses "Claxo" and Defendant attests that her true surname is "Clausen."

to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention," "Convention," or "the Treaty"), 9 U.S.C. § 201, et seq. *See* Notice of Removal ("Notice," Dkt. No. 1). The instant Motion followed.

## I. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and possess only that jurisdiction as authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action from state court when the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987). Removal statutes are "strictly construe[d] against removal," and the removing party bears the burden of overcoming the "strong presumption against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Title 9 of the United States Code, the Federal Arbitration Act ("FAA"), governs arbitration. Chapter 1 concerns domestic arbitration; Chapter 2 and 3 concern foreign arbitration. *See Commissions Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 324 (D.C. Cir. 2014). This second chapter was added in 1970 once the United States acceded to the New York Convention. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644, 207 L. Ed. 2d 1 (2020); June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997. These chapters are "closely interrelated," but "not a seamless whole" as Congress gave Chapter 2 primacy over Chapter 1 in the case of conflict. *Bautista v. Star Cruises*, 396 F.3d 1289, 1296–97 (11th Cir. 2005). Section 205, found within Chapter 2, offers one possible route to removal. A defendant may remove the matter to federal court when the matter "relates to an arbitration agreement or award falling under the [New York] Convention." 9 U.S.C. § 205.

## III. DISCUSSION

Plaintiff argues that this action cannot be removed pursuant to section 205 because Defendant fails to adequately demonstrate that the matter relates to an arbitration agreement which falls under the Convention. To qualify for removal under this section, Defendant must demonstrate both that the employment discrimination claims relate to the Arbitration Agreement and that the Agreement falls under the New York Convention. *See* 9 U.S.C. § 205. The Court finds that the employment discrimination claims relate to the Arbitration Agreement, but the Arbitration Agreement does not fall under the Convention.[2] Therefore, subject matter jurisdiction is not present and the action must be remanded to state court.

**A. Plaintiff's claims are related to the Arbitration Agreement.**

To remove a matter to federal court pursuant to section 205, the subject matter must "relate[ ] to an arbitration agreement." 9 U.S.C. § 205. Generally, federal courts interpret the relatedness requirement broadly. *See e.g., Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011) ("The phrase 'relates to' is plainly

---

[2] Defendant also argues that this Motion must be dismissed due to Plaintiff's failure to abide by Local Rule 7-3. This rule requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion." Based on the parties' moving papers, it appears that Plaintiff emailed and called Defendant to set up a conference, but these attempts were never received. *See* Reply at 2-3; Motion Exh. 1, Beverlin Decl. The Court retains its discretion to deny the Motion based on a failure to abide by the Local Rules, but will not do so in this instance. It appears Defendant has suffered little or no prejudice, and it seems unlikely that conferring would have avoided this Motion. *See Jauregui v. Nationstar Mortg. LLC*, No. EDCV 15-00382-VAP, 2015 WL 2154148, at *2 (C.D. Cal. May 7, 2015) ("If there is little or no prejudice, courts will sometimes consider the motion despite the failure to meet and confer."); Reply at 2-3. Nevertheless, Plaintiff is reminded that Local Rules serve a purpose and that going forward, the parties are expected to fully comply with the spirit and letter of the Local Rules.

4.

broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes."); *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("[T]he district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to.'"). Whether the Agreement is ultimately enforceable is at this stage not relevant; the Court needs to find merely that "a court *could* find that the Agreement governs this dispute." *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar*, No. CV155099PSGJPRX, 2015 WL 5471434, at *2 (C.D. Cal. Sept. 18, 2015) (emphasis added).

The Arbitration Agreement signed by Plaintiff states that it covers "all past and present disputes, claims, or controversies . . . that relate in any way to employment." Jurkovich Decl. Exh. C, at 2. The policy further specifies that it covers claims related to "harassment and/or discrimination . . . under federal, state, or local law" and "wrongful discharge." *Id*. Given the expansive understanding of the phrase "relates to," the Court finds that the Agreement not only *could* impact the disposition of this matter, its use by the Defendant to remove this case to federal court has already done so. *See Freaner v. Valle*, No. 11CV1819 JLS MDD, 2011 WL 5596919, at *3 (S.D. Cal. Nov. 17, 2011); Notice at 4–5. Accordingly, this first element required to assert removal under section 205 is met.

**B. The Arbitration Agreement does not fall under the Convention.**

To fall under the New York Convention, "the award [or arbitration agreement] (1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope." *Ministry of Def. of Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989); *see* 9 U.S.C. § 202. Defendant argues that a slightly different Ninth Circuit inquiry should be used, as set forth in

5.

*Balen v. Holland Am. Line Inc*. *See* Notice at 7; 583 F.3d 647, 654 (9th Cir. 2009). However, the *Balen* test is used to determine whether to *enforce* an arbitration agreement that has already been found to fall under the New York Convention. *See* 583 F.3d at 654 ("Courts generally address four factors to determine whether to enforce an arbitration agreement under the Convention."). In typical section 205 removal cases that utilize the *Balen* test, that the agreement falls under the New York Convention may be so obvious it hardly deserves in-depth discussion. These cases often involve foreign sailors, such as in *Balen*, or arbitration decisions made by foreign arbiters. *See e.g., Beiser v. Weyler*, 284 F.3d at 666; *Castro v. Tri Marine Fish Co. LLC*, 921 F.3d 766, 771–73 (9th Cir. 2019) (Plaintiff was both a foreign sailor and party to a foreign arbitration.). However, in a less obvious case such as this, where the sole foreign connection is Plaintiff's citizenship, the Court must begin with the *Gould* framework due to its close adherence to the text of section 202.

      **i.**     **The Arbitration Agreement arises out of a legal relationship.**

Section 202 states that that an arbitration agreement must arise out of a legal relationship "including a transaction, contract, or agreement described in section 2 of this title." 9 U.S.C. § 202. Section 2 establishes one type of valid contract to be "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2. Given these definitions, an employee signing an arbitration agreement with their employer is an example of a legal relationship formation. *Cf. Rogers v. Royal Carribean Cruise Lines*, No. CV 06-4574-SVW (EX), 2007 WL 9735873, at *5 (C.D. Cal. Jan. 25, 2007), *aff'd sub nom. Rogers v. Royal Carribean Cruise Line*, 547 F.3d 1148 (9th Cir. 2008) (finding that an agreement signed by seafarer employees to arbitrate with their employer indicates a legal, commercial relationship). Thus, the Arbitration Agreement here arises out of a legal relationship between Plaintiff and Defendant.

//

### ii. The Arbitration Agreement is not commercial in nature.

When the United States signed the New York Convention, it agreed to apply it "only to differences arising out of legal relationships . . . which are considered as commercial under the national law of the United States." N.Y. Convention, n. 29. The Convention, as codified in chapter 2 of title 9, does not define "commercial," but does point to section 2 of the FAA for guidance. *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 104 (D.C. Cir. 2015); 9 U.S.C. § 202. This section governs "contract[s] evidencing a transaction involving commerce thereafter arising out of such contract or transaction." U.S.C. § 2. Courts generally find "'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 2040, 156 L. Ed. 2d 46 (2003). Despite this broad scope, agreements still must include an interstate commerce connection to conform with Commerce Clause limitations. *See Southland Corp. v. Keating*, 465 U.S. 1, 14, 104 S. Ct. 852, 860, 79 L. Ed. 2d 1 (1984); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 239, 199 Cal. Rptr. 3d 332, 341 (2016).

Defendant has failed to show that the Arbitration Agreement has any link to interstate commerce. For an employment arbitration agreement to fall under the FAA, courts require a showing that the employee's duties affected interstate commerce. *See Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 200–01, 76 S. Ct. 273, 275, 100 L. Ed. 199 (1956) ("There is no showing that petitioner while performing his duties under the employment contract was working 'in' commerce, was producing goods for commerce, or was engaging in activity that affected commerce, within the meaning of our decisions."); *Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 688, 168 Cal. Rptr. 3d 800, 809 (2014). While Defendant mentions its operations are "national in scale," Jurkovich Decl. ¶ 4, there is no showing of how Plaintiff's duties in Los

7.

Angeles impacted those national operations. Indeed, Plaintiff worked for Defendant in Los Angeles County throughout her tenure. Jurkovich Decl. ¶¶ 7, 12. She was employed as an "assembly laborer" with no indication that this work affected interstate commerce. *See* Motion at 3. There is additionally no evidence to suggest that during the course of her work she used an instrumentality of interstate commerce such as a telephone, the mail, or an electronic communication system. *See Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 105 (S.D.N.Y. 1995). In short, the facts alleged leave little reason to believe that the Arbitration Agreement between Plaintiff and Defendant impacted interstate commerce, and therefore, this Agreement does not comport with the definition of "commercial" as understood in the FAA.

### iii. The Arbitration Agreement is entirely domestic in scope.

The linchpin of Defendant's argument for federal jurisdiction is that due to Plaintiff's non-U.S. citizenship, the Agreement is not entirely domestic in scope and thus automatically falls under the Convention. *See* Notice at 8–9. However, this interpretation of section 205 and the Convention oversimplifies the text and contravenes congressional purpose and intent. Further, any precedent *appearing* to support this interpretation differs significantly from the facts of this case.

The likely origin of this oversimplification lies in a misreading of an ambiguous portion of section 202. After discussing the general criteria for an agreement or award to fall under the Convention, the statute provides an exception: "An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. Defendant appears to assume that the text's lack of guidance regarding a matter with a foreign party suggests that the mere presence of a foreign party is enough for an agreement to fall under the Convention. However, the text of the statute does not

8.

offer such a suggestion. The above exception simply clarifies that when two United States citizens are in an arbitration dispute, the standard is higher for the Convention to apply. The Court will refrain from reading additional language into a statute. *See Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17, 100 S. Ct. 1905, 1910, 64 L. Ed. 2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied").

Such a reading is also inconsistent with the scope of the Convention. Article I of the Convention states that the Convention applies "to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." N.Y. Convention, art. I(1). Applied here, this inquiry is relatively straightforward as the arbitration process is sought in California and the parties seek enforcement of the award in California. Both legally and in common usage this Agreement is not an instance of foreign arbitration. *See Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983) ("[I]t is not a foreign award as defined in Article I (1) because it was not rendered outside the nation where enforcement is sought.").

Moreover, this interpretation proposed by the Defendant contradicts the legislative intent and purpose of the law which was to apply to agreements of a foreign nature exclusively. During congressional hearings prior to codification of the Convention, Chairman of the Secretary of State's Advisory Committee on Private International Law, Richard D. Kearney, clarified that this new chapter had a limited scope. "[This proposed chapter] provides for the removal to the District Court from the State Court in a case that falls under the Convention, but what we are dealing with is foreign commerce which now is totally within the ambit of federal authority." S. Comm. on Foreign Relations, Foreign Arbitral Awards, S.Rep. No. 91–702, at 6 (1970) S.Rep. No. 91–702, at 44 (1970). He elaborated "The basic reason that we propose this and became part of the convention is because the people engaged in

foreign trade consider arbitration is [sic] a very economical and speedy way of settling commercial disputes and they are the ones who wanted this." *Id.* at 45. Since then, courts have reaffirmed that the scope of the Convention is limited to foreign commerce. *See David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991) ("The goal of the Convention is to promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions on the whole.").

Finally, Defendant misreads the caselaw. The caselaw Defendant relies on to support its oversimplified interpretation actually confirms that more foreign ties are needed beyond just the citizenship of the parties. For example, Defendant cites to a footnote in a Fifth Circuit decision which states, "At least one of the parties to the agreement must not be a U.S. citizen, or, if the agreement is entirely between U.S. citizens, it must have some 'reasonable relation' with a foreign state." *Beiser v. Weyler*, 284 F.3d at 666 n. 2. In another case, the Court stated, "[T]he arbitral award made in the United States under American law falls under the Convention as defined in 9 U.S.C. section 202 because one of the parties to the arbitration, Kyocera, is not a citizen of the United States." *LaPine v. Kyocera Corp.*, No. C 07-06132 MHP, 2008 WL 2168914, at *4 (N.D. Cal. May 23, 2008). Yet, the facts behind these cases are vastly different from those in the present matter because of their more direct foreign ties. In *Beiser*, the matter concerned an American corporation suing a foreign party over a financial interest in a Hungarian oil field. *See* 284 F.3d 665. In *LaPine*, the dispute was between an American and Japanese corporation regarding the enforcement of an arbitration award rendered by the ICC International Criminal Court of Arbitration. *See* WL 2168914. Given the significant foreign connections beyond mere citizenship of the parties, these cases cannot stand for the principle that mere presence of a foreign party is sufficient to have the agreement fall under the Convention.

Ultimately, Plaintiff's matter falls short of an instance of foreign arbitration under the Convention. Although Plaintiff is a Honduran citizen, she has lived in the United States for fifteen or more years. Jurkovich Decl. ¶ 7. Additionally, the parties seek arbitration to be both performed and enforced in California. Given these circumstances, this Agreement maintains a sufficiently domestic nature and falls short of the level of international commerce Congress contemplated when it agreed to the Convention.

### C. Finding that the Arbitration Agreement falls under the Convention would violate public policy.

Although the Court has already found that this matter falls outside of the Convention, the significance of this decision necessitates a brief discussion of all the grounds for which this matter should not be enforced. Article V of the Convention permits "the competent authority where recognition and enforcement is sought" to refuse enforcement if it would be "contrary to the public policy of that country." N.Y. Convention, art. V(2)(b). To have the Agreement fall under the Convention simply due to Plaintiff's status as a foreign national would likely create troubling results. For one, it would invite into federal court any arbitration agreement with a foreign party, bypassing the amount in controversy requirement ordinarily needed to obtain diversity jurisdiction. Cases such as this with a non-citizen party engaged in an arbitration agreement are not rare. Additionally, easily hearing a matter that only raises state claims carries significant federalism implications. Federal courts must be mindful of the "presumption that protects against undue federal incursions into the internal, sovereign concerns of the states." *Friends of the Eel River v. N. Coast R.R. Auth.*, 3 Cal. 5th 677, 705, 399 P.3d 37, 53 (2017). Protecting its citizens from employment discrimination certainly qualifies as a compelling state interest. To haphazardly sweep these claims into the jurisdiction of

federal law under the guise of enforcing an international treaty should raise serious concerns that this amounts to an incursion into state sovereignty.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion. The matter is remanded to Los Angeles County Superior Court.

Dated: April 8, 2021

HONORABLE ANDRÉ BIROTTE JR.

UNITED STATES DISTRICT COURT JUDGE